# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| Nicholas Meyer, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER GRANTING MCKENZIE ELECTRIC COOPERATIVE, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF** |
| vs. | ) ) ) | |
| McKenzie Electric Cooperative, Inc., | ) ) | Case No. 1:16-cv-365 |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| 4T Construction, Inc., | ) ) | |
| Third-Party Defendant, | ) | |

Before the Court is McKenzie Electric Cooperative, Inc.'s motion for summary judgment against Plaintiff Nicholas Meyer filed on April 27, 2018. See Docket No. 21. Nicholas Meyer filed a response in opposition to the motion on June 25, 2018. See Docket No. 40. On July 10, 2018, McKenzie Electric Cooperative, Inc. filed a reply. See Docket No. 44. For the reasons set forth below, McKenzie Electric Cooperative, Inc.'s motion for summary judgment is granted.

## I.    BACKGROUND

This case arises from an accident that occurred on January 20, 2015, near Watford City, North Dakota. See Docket No. 1, p. 2. At the time of the accident, the Plaintiff, Nicholas Meyer, was working as an apprentice lineman for 4T Construction, Inc. ("4T Construction"). 4T Construction, an Idaho corporation, is a power line construction contractor. See Docket Nos. 5 and 10. 4T Construction was contracted by McKenzie Electric Cooperative, Inc. ("McKenzie Electric"), an electric cooperative, to complete work on the Bear Ben Road Reconductor Project ("the Project") which consisted of live power lines on 40-foot poles. See Docket No. 1, p. 2. While

1

working on the Project, Meyer was electrocuted and sustained serious burns to his hands, forearms, and right thigh. As a result of the burns on his hands, Meyer's left hand was amputated.

On October 17, 2016, Meyer commenced this lawsuit against McKenzie Electric for negligence and ultrahazardous activity, seeking damages for the injuries he sustained as a result of the accident. See Docket No. 1. On November 22, 2016, McKenzie Electric filed a third-party complaint against 4T Construction for contractual indemnification. See Docket No. 5.

On April 27, 2018, McKenzie Electric filed a motion for summary judgment against Meyer, arguing McKenzie Electric owed no duty to Meyer because 4T Construction was an independent contractor of McKenzie Electric, and McKenzie Electric retained no control over 4T Construction's work. See Docket Nos. 21 and 22. On June 25, 2018, Meyer filed a response in opposition to the motion. See Docket No. 40. On July 10, 2018, McKenzie Electric filed a reply. See Docket No. 44.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving

party bears the burden of demonstrating an absence of a genuine issue of material fact. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The non-moving party may not rely merely on allegations or denials; rather, it must set out specific facts showing a genuine issue for trial. Id.

### III. LEGAL DISCUSSION

McKenzie Electric argues it is entitled to summary judgment in its favor. Specifically, McKenzie Electric argues it owed no duty to Meyer because 4T Construction was an independent contractor of McKenzie Electric, and McKenzie Electric retained no control over 4T Construction's work; thus, it is not liable for 4T Construction's allegedly negligent actions. See Docket Nos. 21 and 22. In addition, McKenzie Electric argues Meyer's claim for ultra hazardous activity fails as a matter of law because such a claim does not exist under North Dakota law, and even if it did, the transmission of high-voltage electricity through transmission lines is not an abnormally dangerous activity. See Docket No. 22.

#### i. Meyer's Negligence Claim

In a diversity action, federal courts apply state substantive law; thus, North Dakota law applies. See White v. Lavigne., 741 F.3d 229, 230 (8th Cir. 1984). "Actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty." Groleau v. Bjornson Oil Co., Inc., 2004 ND 55, ¶ 6, 676 N.W.2d 763. In order to establish a cause of action for negligence, the plaintiff must demonstrate that the defendant had a duty to protect the plaintiff from injury. Id. Generally, the determination of whether a duty exists is a question of law for the court to decide. Id. "However, if the existence of a duty depends upon the resolution of factual

3

issues, the facts must be resolved by the trier of fact." Id. "If no duty exists on the part of the defendant, there is no negligence." Hurt v. Freeland, 1999 ND 12, ¶ 11, 589 N.W.2d 551.

"It is well-established in North Dakota that, as a general rule, an employer is not liable for the torts of an independent contractor." Vandewarker v. Continental Res., Inc., No. 4:13-cv-00070, 2015 WL 9855894, *3 (D.N.D. Sept. 16, 2015); see also Grewal v. North Dakota Ass'n of Counties, 2003 ND 156, ¶ 10, 670 N.W.2d 336; Crocker v. Morales-Santana, 2014 ND 182, ¶ 30, 854 N.W.2d 663. However, Section 414 of the Restatement (Second) of Torts recognizes an exception to that general rule of employer non-liability. See Restatement (Second) of Torts § 414 (1965). Section 414 states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Id. Thus, this exception permits an employer to be subject to liability for its independent contractor's acts, if the employer retains sufficient control over the work. Gasal v. CHS Inc., 798 F. Supp. 2d 1007, 1012 (D.N.D. 2011); Grewal, 2003 ND 156 at ¶ 10. "The duty created by Section 414 may arise through an express contractual provision retaining the right to control some part of the operative details of the independent contractor's work, or through the employer's actual exercise of retained control of the work." Grewal, 2003 ND 156 at ¶ 11.

"The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work" performed. Iverson v. Bronco Drilling Co., Inc., 667 F. Supp. 2d 1089, 1094-95 (D.N.D. 2009). "[I]t is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed." Id. (quoting Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 448 (N.D. 1994)). Comments to the Restatement (Second) of Torts § 414 further clarify this concept:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmt. c (1965). It is clear under North Dakota law that the determination of whether an exception to the general rule of employer non-liability applies is a question of law the Court must resolve before allowing the jury to hear the evidence. Schlenk v. Northwestern Bell Telephone Co., Inc., 329 N.W.2d 605, 608 (N.D. 1983); Iverson, 667 F. Supp. 2d at 1095.

McKenzie Electric asserts it employed 4T Construction as its independent contractor, and it is not liable for 4T Construction's alleged torts. In support of its position, McKenzie Electric points to the plain language of the parties' contract which explicitly provides as such:

> As CONTRACTOR [4T Construction] is an independent contractor performing its work to the requirements as set out by MEC [McKenzie Electric] but without supervision of MEC or its employees, CONTRACTOR agrees to hold harmless, indemnify, and defend MEC as set out in Exhibit "C" attached hereto and made a part hereof for all services and materials provided by CONTRACTOR for or on behalf of MEC.

See Docket No. 25-4, p. 2. Meyer's response argues the contract is ambiguous, it did not memorialize the parties' entire agreement, and argues the parties "ostensibly . . . entered into the Contract without any sincere intent to review, understand, negotiate, and/or actually abide by its terms, but merely as an ineffective attempt to seem official . . . ." See Docket No. 40, p. 6. The Court does not find Meyer's argument to be persuasive. A contract's language governs its interpretation if the language is "clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. Here, the contract plainly and unambiguously states 4T Construction is an independent

contractor that performs its work for McKenzie Electric without the supervision of McKenzie Electric or its employees. See Docket No. 25-4, p. 2.

Nevertheless, Meyer argues there are disputed factual issues about whether 4T Construction was "truly" an independent contractor. See Docket No. 40. Thus, this Court must determine whether McKenzie Electric retained sufficient control over the method, manner, and operative details of 4T Construction's day-to-day work to invoke liability under Section 414.

4T Construction president, John Gulley, testified at his deposition that McKenzie Electric was concerned with the finished product, but did not direct or instruct 4T Construction on how to do the job. See Docket No. 25-2, pp. 33-34. 4T Construction's vice president, Lance Wood, also testified McKenzie Electric did not supervise or give input to 4T Construction except for scheduling, i.e. when the work needed to be started or completed. See Docket No. 25-10, p. 16. Jared Dehaven, a journeyman lineman and 4T Construction's crew foreman on site the day of the accident, testified 4T Construction would report to McKenzie Electric on how the job is going, but McKenzie Electric did not oversee 4T Construction's work or safety program. See Docket No. 25-7, pp. 35, 39-40. McKenzie Electric's CEO, John Skurupey, testified McKenzie Electric did not supervise, monitor, or inspect 4T Construction's work, and McKenzie Electric was concerned only with the finished product. See Docket No. 25-1, pp. 13, 37. In fact, the Plaintiff testified that during the entire time he was employed by 4T Construction, he had never met anyone from McKenzie Electric. See Docket No. 26, p. 46.

The Court finds the record demonstrates 4T Construction was an independent contractor of McKenzie Electric who was free to perform the work in its own way. McKenzie Electric neither contractually retained the right to exercise control over the work performed by its independent contractor (4T Construction), nor did McKenzie Electric exercise actual control over the work performed by 4T Construction or Meyer. The record clearly reveals that McKenzie Electric

exercised no actual control over the method, manner, or operative details of the work performed by 4T Construction or Meyer. 4T Construction was hired as an independent contractor to complete electrical work on the Project. Meyer was an employee of 4T Construction and was directed by 4T Construction to perform the electrical work requested by McKenzie Electric. McKenzie Electric did not supervise, direct, or instruct 4T Construction or Meyer on the method, manner, or operative details of how the work was to be performed. Meyer was free to perform the work as he saw fit. Consequently, McKenzie Electric is not liable for any of its independent contractor's actions or inactions.

Meyer also argues McKenzie Electric owed a duty to Meyer to provide a safe work environment or equipment. See Docket No. 40. McKenzie Electric argues Meyer cannot demonstrate that McKenzie Electric had sufficient control over the Project to the extent it owed Meyer a duty. See Docket No. 22. In support of its position, McKenzie Electric cites to *Vandewarker*, 2015 WL 9855894. See Docket No. 22, p. 17.

In *Vandewarker*, the plaintiff was responsible for emptying and hauling wastewater from holding tanks at various well sites for Great Western Resources, his employer, who was an independent contractor of the well site owner, Continental Resources. 2015 WL 9855894 at *1. The plaintiff asserted he fell while working at Continental's well site after climbing improperly attached stairs attached to a holding tank owned by Continental. Id. The plaintiff sued Continental for negligence and sought "to impose liability on Continental based on Continental's ownership of the stairs and storage tanks at the well site." Id. at *4. This Court summarily dismissed the plaintiff's negligence claim, noting:

> [T]he Court finds as a matter of law that Continental's ownership of the tanks or the stairs at the well site is irrelevant to the issue of Continental's duty to the plaintiff. "[M]erely providing equipment is not the kind of control that creates a duty." Kristianson v. Flying J Oil & Gas, Inc., 553 N.W.2d 186, 190 (N.D. 1996). "Instead, 'a duty arises only if the employer, in addition to providing the equipment,

7

also directly supervises or controls its use, or instructs the independent contractor's employee on the use of the equipment.'" Id. (internal citations omitted).

Id. Further, this Court found Continental had no special duty to provide a safe work environment for the plaintiff since Continental retained no direct control over Great Western Resources, Continental's independent contractor, at the well site. Id.

In *Pechtl v. Conoco, Inc.*, the North Dakota Supreme Court determined the question of whether an employer of an independent contractor has a duty to provide a safe workplace is "governed by [the] resolution of the issue of retained control under Section 414." 1997 ND 161, ¶ 21, 567 N.W.2d 813. The plaintiff in *Pechtl* argued Conoco could not shift its duty to provide a safe workplace to an independent contractor. The North Dakota Supreme Court disagreed, holding an employee of an independent contractor could not bring a claim against an employer of the independent contractor for an injury allegedly caused by the employer's hazardous or dangerous worksite. Id. at ¶ 22 (citing Fleck, 522 N.W.2d 445).

In this case, Meyer cannot maintain a cause of action against McKenzie Electric for failure to provide a safe work environment as McKenzie Electric retained no direct control over the Project. 4T Construction was responsible for its own safety procedures. Meyer, an employee of 4T Construction, was responsible for following 4T Construction's safety procedures and for his own safety in performing his job duties. Further, McKenzie Electric was under no duty to "make specific inquiry as to the work and safety practices of an independent contractor" as this would be contrary to the principal that an employer has a right to rely on the presumption that its independent contractors will perform the work in a safe manner. See Schlenk, 329 N.W.2d at 613-614.

Although McKenzie Electric was interested in the safety of all employees of its independent contractors, "interest in safety at the jobsite, however, does not rise to the level of control required under Section 414." Pechtl, 1997 ND 161, ¶ 17. Therefore, the Court finds as a

matter of law that McKenzie Electric owed no duty to Meyer regarding conditions at the Project, and it cannot be held liable for injuries sustained by Meyer.

### ii. Meyer's Ultra Hazardous Activity Claim

McKenzie Electric also argues Meyer's claim for ultra hazardous activity fails as a matter of law because such a claim does not exist under North Dakota law, and even if it did, the transmission of high-voltage electricity through transmission lines is not an abnormally dangerous activity. See Docket No. 22. Meyer's briefing does not specifically address or respond to McKenzie Electric's arguments regarding Meyer's claim for ultra hazardous activity. See Docket No. 40.

"It is clear North Dakota has not yet decided whether to adopt a cause of action for strict liability for ultrahazardous or abnormally dangerous activities." Mehl v. Canadian Pacific Ry., Ltd., 417 F. Supp. 2d 1104, 1118 (D.N.D. 2006); see also Lowder v. Slawson Exploration Co., Inc., No. 4:14-cv-17, 2014 WL 4352182, *2 (D.N.D. Sept. 2, 2014) (refusing to certify question of whether strict liability for extra-hazardous activity existed in North Dakota, but noting "[t]his court . . . has rejected causes of action based on strict liability for extra-hazardous activity."); Armes v. Petro-Hunt, LLC, No. 4:10-cv-078, 2012 WL 1493740, * 3 (D.N.D. April 27, 2012) (noting the "North Dakota Supreme Court has yet to recognize a claim premised on abnormally dangerous activities."). Further, this Court has noted, "[t]he North Dakota Supreme Court has given no indication that it would adopt strict liability for ultrahazardous or abnormally dangerous activities . . . ." Mehl, 417 F. Supp. 2d at 1118.

In *Wirth v. Mayrath Industries, Inc.*, the plaintiff's husband was electrocuted and subsequently died after his grain auger came in contact with the phase wire of an electrically charged power line. 278 N.W.2d 789, 790 (N.D. 1979). The Plaintiff commenced a wrongful

death action against the local electric cooperative that owned the power line. Id. The Plaintiff argued strict liability for abnormally dangerous activities as specified in the Restatement (Second) of Torts §§ 519 and 520 should apply to the electric cooperative due to its activity of maintaining electrically charged power lines. Id. at 790-91. The North Dakota Supreme Court, while not specifically adopting or rejecting the Restatement test, concluded the provisions in the Restatement (Second) of Torts §§ 519 and 520 were "inapplicable" to the case. Id. at 794. Further, the North Dakota Supreme Court noted that the question of whether the maintenance of an uninsulated high voltage transmission line constitutes an "abnormally dangerous activity" is a matter "appropriate only for legislative consideration." Id. at 792-93.

This Court has previously rejected causes of action based on strict liability for extra-hazardous activity as North Dakota has not yet decided whether to adopt a cause of action for strict liability for ultrahazardous or abnormally dangerous activities. The Plaintiff has failed to point to any controlling authority to support its claim for "ultra hazardous activity" or to even meaningfully respond to McKenzie Electric's arguments regarding this claim. Accordingly, the Court finds McKenzie Electric is entitled to summary judgment in its favor on this claim.

### IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, McKenzie Electric's motion for summary judgment against the Plaintiff (Docket No. 21) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 1st day of October, 2018.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court